UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CURTIS DEWAYNE COVINGTON, )<br>and KELVIN MOORE, )<br> )<br>   Plaintiffs, )<br> )<br> vs. )<br> )<br>TOMMY GREENWELL and )<br>BRADLEY SWIMS, )<br> )<br>   Defendants. ) | Case No. 1:05CV116 CDP |

## **MEMORANDUM AND ORDER**

  This matter is before me on the motion for summary judgment of Defendants Greenwell and Swims. Plaintiffs Covington and Moore are incarcerated by the Missouri Department of Corrections, but during the relevant time period for the purposes of this lawsuit, they were both incarcerated in the Pemiscot County Jail. In this pro se action, Covington argues that he failed to receive certain medications that he had been prescribed and was denied the right to see a doctor. Together, Covington and Moore allege that the jail did not have appropriate food, no gym equipment, no outside recreation, no caseworkers to handle grievances, no library, no radio, no weekday visitation, no juice, honey, or ice cream, tuna or mackerel, sandwich spread or jalapeno peppers. In an order dated January 8, 2006, all of Covington and Moore's allegations, except those

pertaining to medications, food, and exercise, were dismissed as legally frivolous under 28 U.S.C. § 1915(b).

Defendants contend that their handling of Covington's medical needs was based upon his doctor's recommendation and were therefore not deliberately indifferent to his medical needs. Defendants also contend that Covington and Moore's other claims do not amount to constitutional violations. Defendants have moved for summary judgment, claiming that the undisputed material facts demonstrate that they are entitled to judgment as a matter of law. Because Covington cannot demonstrate deliberate indifference on the part of the defendants and because neither Covington nor Moore have shown any violation of their constitutional rights as a result of their other claims, defendants are entitled to judgment as a matter of law.

**Standards Governing Summary Judgment**

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to plaintiff. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Defendants have the burden to establish both the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once defendants have met this burden, plaintiffs cannot rest on the allegations in their pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## Undisputed Facts

During part of 2005, Covington and Moore were incarcerated in the Pemiscot County Jail. Covington was at the jail from May 24, 2005 until November 28, 2005. Moore was there from November 28, 2004 to November 17, 2005. Tommy Greenwell was the Sheriff and Brad Swims was the Deputy Sheriff.

At the time of his intake into Pemiscot, Covington denied any medical problems or taking any medication. The booking sheet indicated "Serquel" next to a question asking whether he had any medical or mental health problems that the sheriff's department would need to know about. Sometime after entering Pemiscot, Covington began to complain of mental health problems and the need to see a doctor. No evidence in the record indicates that Covington complained to either Greenwell or Swims about his mental health needs. On July 28, 2005, Covington was taken to see Dr. Salqueiro for a psychiatric exam. He was not

prescribed any medication at that time. On August 8, 2005, Covington was again taken to see Dr. Salqueiro for another psychiatric exam. At that time Dr. Salqueiro prescribed Seroquel for Covington, who was to receive one tab in the morning and two tabs in the afternoon. Covington was given his medication as prescribed from that date until the existing prescription ran out on September 16.

On August 27, a shakedown of the jail took place, and it was discovered that Covington was hoarding his Seroquel medication; eight tabs of Seroquel were found hidden under his mattress. Following the shakedown, prison officials contacted Dr. Salquiero, who notified the jail to discontinue Covington's medication. The jail continued to give Covington the medication until the existing prescription ran out on September 16, but jail officials watched him swallow it after the shakedown. Dr. Salqueiro told the jailers that if Covington began having trouble, they should schedule another appointment. Covington did not see Dr. Salquiero again.

The rest of the relevant undisputed facts are as follows. As a result of security and personnel issues within the jail, the jail policy is that family and friends can visit with inmates on Saturdays from 9:00 a.m. to 5:00 p.m. Although there is no outdoor recreation area, prisoners are given space to exercise in the recreation room in the jail. Each pod in the jail has a television, but radios are not

allowed in jail cells for security reasons. Finally, prisoners are given food to meet their nutritional needs as determined by the jail.

On August 23, 2006, Defendant Covington filed a motion to stay pending further discovery. I have no reason to believe that the affidavits sought by Covington would reveal new information. Although Covington's motion is not an affidavit and has not been properly authenticated, I will consider Covington's claims regarding those facts over which he had personal knowledge. Covington asserts that he requested his medication and that when he was booked he told the officers that he needed his medication. Covington does not assert that these requests were made to Greenwell or Swims. Additionally, Covington asserts that he never stated that "he was alright, but just needed to get out of jail." Covington does not have personal knowledge regarding the rest of the issues raised in the motion. As discussed below, these assertions do not give rise to an issue of material fact.

## Discussion

### 1. Covington's Deliberate Indifference Claim

Covington first brings this action pursuant to 42 U.S.C. § 1983, claiming that the defendants violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. The Supreme Court has held that "deliberate

indifference to serious medical needs of prisoners constitutes 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976) (citation omitted). It is a violation of the Eighth Amendment to deny medical care for serious medical needs that would "constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-06. As a pretrial detainee, Covington was outside the protections of the Eighth Amendment because it only applies to convicted prisoners, but as a recent Eighth Circuit opinion states, the Fourteenth Amendment guarantees for pretrial detainees are governed by the same standard of deliberate indifference. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006).

To establish an Eighth Amendment violation, the inmate has the burden of proving both a subjective and objective component. First, the prison official must deprive the inmate of a right that is objectively "sufficiently serious" to rise to the level of a constitutional violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The "act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. (internal quotations omitted). Additionally, the prison official may not be held liable for violations of the Eighth Amendment "for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Under this

standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A claim of deliberate indifference is only indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Estelle, 429 U.S. at 102 (citation omitted).

Deliberate indifference may be manifested "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05 (footnotes omitted). Additionally, "[d]eliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995). However, mere negligence or medical malpractice is "insufficient to rise to a constitutional violation." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Covington contends that the defendants' behavior in failing to get him treatment for his psychiatric needs and then later depriving him of his medication constituted deliberate indifference to his serious medical needs. However, the undisputed evidence in this case demonstrates that defendants were not deliberately indifferent to his serious medical needs as a matter of law. Instead,

Covington received appropriate medical treatment. He was seen by Dr. Salquiero in July but was not prescribed medication on his first visit. Instead, Dr. Salquiero only prescribed medication upon Covington's return visit in August. The record indicates that Covington received this medication, as prescribed, until Dr. Salquiero indicated that the jail officials should no longer administer the drug. Even then, jail officials continued to administer the drug until Covington's prescription expired.

Additionally, Covington has not alleged that Greenwell and Swims were aware of his complaints before he saw Dr. Salquiero. Although Covington's complaint alleges "every week in June I complained about seeing a doctor," it does not indicate to whom he complained or that Greenwell or Swims were actually aware of these complaints. Covington also asserts that he requested treatment by Dr. Salqueiro after the termination of his medication, but he does not indicate that this request was made to Greenwell or Swims. Therefore, I cannot say that defendants intentionally denied or delayed access to medical care.

Further, there is no evidence that Covington was harmed by any delay in treatment. Covington was not initially prescribed Seroquel by Dr. Salqueiro at his July 28 appointment, and Covington has not alleged that he complained to either of the defendants about needing to see a doctor again after his Seroquel was taken

away. This undisputed evidence shows that the defendants were not deliberately indifferent to Covington's medical needs. Under these undisputed facts, the defendants' treatment of Covington's psychiatric needs did not rise to the level of deliberate indifference.

2.  **Plaintiffs' Claims Regarding Food and Exercise**

Persons involuntarily committed to the state's custody by means of a civil proceeding retain liberty interests in essential care items such as adequate food, shelter, clothing, and medical care. See Youngberg v. Romeo, 457 U.S. 307, 324 (1982); see also Kennedy v. Schafer, 71 F.3d 292, 294 (8th Cir. 1995) (noting that involuntarily committed persons unquestionably have a protected liberty interest in a safe and humane environment). However, "detainee[s] simply do not possess the full range of freedoms of ... unincarcerated individual[s]." Bell v. Wolfish, 441 U.S. 520, 546 (1979). The United States Supreme Court has held that there must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). Additionally, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of [detainees]." Bell, 441 U.S. at 546. To accomplish these goals, detention

facility administrators should be given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to . . . maintain institutional security . . . and, in the absence of substantial evidence [that the policies and practices are unnecessary], courts should ordinarily defer to their expert judgment in such matters." Id. at 547-48 (citations omitted).  Under these standards, the Court will address Covington and Moore's remaining claims.

First, Covington and Moore complain about the food in the jail, but this complaint does not give rise to a constitutional violation.  Prison officials must provide a nutritionally adequate diet, but control of that diet is within the discretion of prison authorities.  Divers v. Department of Corrections, 921 F.2d 191, 194 (8th Cir. 1990).  Here, Covington and Moore complain about the food and ration of food, specifically that there is no juice, honey, ice cream, tuna, mackerel, sandwich spread or jalapeno peppers.  Neither plaintiff has alleged that he became ill after a meal, that he lost weight while incarcerated, or that he had religious or medically peculiar circumstances that necessitated a specialized diet. In fact, nothing in record indicates that the food provided by the jail did not meet the nutritional needs of Covington or Moore.  Instead, Covington and Moore's complaint indicates nothing more than a desire for a preferred diet.  Under these undisputed facts, defendants are entitled to judgment as a matter of law with

facility administrators should be given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to . . . maintain institutional security . . . and, in the absence of substantial evidence [that the policies and practices are unnecessary], courts should ordinarily defer to their expert judgment in such matters." Id. at 547-48 (citations omitted).  Under these standards, the Court will address Covington and Moore's remaining claims.

First, Covington and Moore complain about the food in the jail, but this complaint does not give rise to a constitutional violation.  Prison officials must provide a nutritionally adequate diet, but control of that diet is within the discretion of prison authorities.  Divers v. Department of Corrections, 921 F.2d 191, 194 (8th Cir. 1990).  Here, Covington and Moore complain about the food and ration of food, specifically that there is no juice, honey, ice cream, tuna, mackerel, sandwich spread or jalapeno peppers.  Neither plaintiff has alleged that he became ill after a meal, that he lost weight while incarcerated, or that he had religious or medically peculiar circumstances that necessitated a specialized diet. In fact, nothing in record indicates that the food provided by the jail did not meet the nutritional needs of Covington or Moore.  Instead, Covington and Moore's complaint indicates nothing more than a desire for a preferred diet.  Under these undisputed facts, defendants are entitled to judgment as a matter of law with

regard to the claim for deprivation of a nutritionally adequate diet.

Covington and Moore next allege that they were denied adequate exercise. In order to prevail on this claim, they must show that the prison officials were deliberately indifferent to their exercise needs. Wilson v. Seiter, 501 U.S. 294, 298 (1991). "Courts in the Eighth Circuit have held that at least one hour of exercise outside the cell each day is required in order to comply with the eighth amendment." Andrews v. Gunter, No. CV86-L-50, 1987 WL 54372, *3 (D. Neb. 1987) (citing Hutching v. Corum, 501 F. Supp. 1276, 1294 (W.D. Mo. 1980); Cambell v. Cauthron, 623 F.2d 503, 507 (8th Cir. 1980)). Plaintiffs do not allege that they are denied adequate opportunity for exercise, only that it is not outdoors and that there is no gym equipment. Such a claim fails to state a constitutional violation for deprivation of adequate exercise. A failure to provide gym equipment does not meet the deliberate indifference test enunciated in Estelle, 429 U.S. at 106; see Casey-El v. Greenwell, No. 05-104, 2005 WL 2298199, at *4 (E.D. Mo. 2005). Nor does the lack of recreation constitute an unlawful condition of confinement. Anderson v. Coughlin, 757 F.2d 33, 37 (2nd Cir. 1985) (Lack of exercise equipment does not constitute cruel and unusual punishment.); see also Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (only those conditions depriving inmates of the "minimal civilized measure of life's necessities" constitute cruel

and unusual punishment). Accordingly, Defendants are entitled to judgment as a matter of law with regard to Covington and Moore's claims as to lack of gym equipment and outdoor exercise.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Greenwell and Swims motion for summary judgment [#27] is granted, and plaintiff's complaint is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Covington and Moore's motion for an extension of time to complete discovery and/or deny defendants' motion for summary judgment [#38] is denied.

A separate judgment in accordance with this Memorandum and Order is entered the same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2006.